[No. B189575. Second Dist., Div. One. Mar. 29, 2007.]

GREGORY MALAIS, Plaintiff and Appellant, v.
LOS ANGELES CITY FIRE DEPARTMENT, Defendant and Respondent.

352

COUNSEL

Knapp, Petersen & Clarke, Andre E. Jardini and Gwen Freeman for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Claudia McGee Henry, Assistant City Attorney, and Kim Rodgers Westhoff, Deputy City Attorney, for Defendant and Respondent.

OPINION

**ROTHSCHILD, J.**—Plaintiff Gregory Malais, a "Captain II" with defendant Los Angeles City Fire Department (Department), appeals from the summary judgment in favor of the Department on his second amended complaint alleging causes of action for disability discrimination under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.; all further undesignated section references are to the Gov. Code) and adverse employment action in violation of public policy. Malais's case was based on the Department's refusal to assign him to command a fire station, his desired assignment, after the loss of his leg during a work-related accident. Malais contends that the trial court erred in finding that because the Department offered him other positions with comparable pay and promotion opportunities, he did not suffer an adverse employment action. We reject the contention and affirm the judgment.[1]

---

[1] In his original complaint Malais also alleged a negligent infliction of emotional distress cause of action. The court sustained the Department's demurrer thereto without leave to amend, after which Malais abandoned that cause of action. In the second amended complaint (the operative pleading), Malais added two "retaliation" causes of action. The court denied the Department's summary judgment motion as to the two retaliation causes of action, then granted Malais's motion, made to produce a final judgment and facilitate this appeal, to dismiss them with prejudice. Thus, this appeal involves only the propriety of granting the Department summary judgment on the two disability discrimination causes of action.

As part of its summary judgment motion, the Department also alleged that Malais was not "otherwise qualified" to command a fire station, another element of his disability discrimination causes of action, as a result of losing his leg, and that it was justified in refusing to assign him to such a position. Malais disputed this claim, arguing that with his prosthesis he could perform all firefighter duties required of a station commander. As part of this issue, the parties produced evidence from Malais's parallel workers' compensation action, including whether and to what extent he was "disabled." The court did not address the alternative "qualifications"

## FACTS

Malais joined the Department in 1980, and was promoted to Captain II in 2000. In 2002, he was injured in a work-related incident and as a result his right leg was amputated below the knee. Malais returned to work in a light-duty capacity in April 2003. In October 2003, Malais returned to work as a full-time Captain II assigned to in-service training, a position designated as a special duty assignment.

Within the Department, Captain II's may be assigned to at least two position classes: special duty, and platoon duty. There are approximately 38 special duty Captain II positions, which generally involve working a regular 40-hour workweek in an environment resembling a business office, although some, such as the training position to which Malais was assigned, may simulate actual firefighting. Captain II's assigned to platoon duty generally work at fire stations and generally work a consecutive 24-hour day alternating with a 24-hour day off, followed by several consecutive days off, in an environment involving a team of firefighters preparing for and fighting fires.

Both classes receive equal pay and possess equal promotional opportunities within the Captain II range, to Battalion Chief (the next promotional step in the Department), and to higher levels, including Chief of the Department. Many Captain II's have been promoted after serving in special duty assignments. Indeed, since his return to work, Malais has been promoted to the top of the Captain II range, but he has not attempted and does not want to be promoted to battalion chief or higher; he wants only to work in platoon duty. Both classes also provide opportunities for significant overtime pay, although

issue. Because we agree with the court and the Department that Malais did not suffer an adverse employment action and thus that the Department was entitled to summary judgment on the two disability discrimination causes of action, we do not address the "qualifications" issue and omit the facts and discussion regarding whether Malais was qualified to be a station commander.

Likewise, we do not discuss the now final workers' compensation action, in which the Workers' Compensation Appeals Board (WCAB) affirmed findings that Malais was not disabled, was fully capable of performing all Captain II duties, and was entitled to compensation not exceeding $10,250 for disability discrimination pursuant to Labor Code section 132, subdivision (a). We reject Malais's argument that the WCAB opinion has collateral estoppel effect on our case, because, as the WCAB held in rejecting the Department's parallel claim that the trial court's granting it summary judgment was res judicata and should entitle it to judgment in its favor on the workers' compensation claim, "the issues in a FEHA action are not identical to the issues in a claim of discrimination under [Labor Code] section 132a," citing *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1158 [77 Cal.Rptr.2d 445, 959 P.2d 752].

there are some differences in the availability and qualifications required for such pay in the two classes. Within Malais's in-service training special duty assignment, overtime opportunities included doing additional training and educational programs both within the Department and for other agencies. In addition, special duty Captain II's can become certified to safety watch status, which permits them to act as inspectors at public events, and gives them significant overtime opportunities. Although Malais believed he could obtain the safety watch certificate he did not attempt to do so. Some platoon duty assignments provided more overtime opportunities. Malais estimated that he earned more overtime when assigned to platoon duty before his injury, but admitted that he turned down overtime opportunities in the special duty assignment.[2] Despite the two classes' equal pay and promotional opportunities, Malais consistently maintained that, although he was qualified for both assignments, he wanted to be assigned only to platoon and not to special duty, because he prefers firefighting, the platoon work schedule, and the atmosphere of working as part of a team of firefighters to the typical special-duty-assignment business office work environment.

After returning to full-time work, Malais, who believed he was rehabilitated and, with his prosthesis, could fully perform all duties required of a Captain II assigned to platoon duty at a station, asked to be so assigned. The Department refused because it believed there was an unacceptable risk to Malais, other firefighters, and the public from his working platoon duty with a prosthetic leg. As discussed *ante*, footnote 1, the parties dispute whether Malais is qualified to fully perform all the duties of a Captain II assigned to platoon duty.

Malais then filed his lawsuit alleging two causes of action for disability discrimination in violation of FEHA and adverse employment action in violation of public policy. The court granted the Department's summary judgment motion, finding that Malais did not suffer an adverse employment action.

## DISCUSSION

Malais contends that the court erred in granting the Department summary judgment by erroneously finding that he did not suffer an adverse employment

---

[2] As discussed *ante*, footnote 1, we reject Malais's argument that the conclusion of the workers' compensation judge that he lost overtime pay is collateral estoppel to a contrary finding in our case. The issues in the two actions are not identical; in our case, unlike in the workers' compensation action, the question is not whether Malais lost a specific amount of overtime *pay* but whether he lost overtime *opportunities* substantial enough, considering the totality of the circumstances, to constitute an adverse employment action.

action. Malais contends that the differences between special and platoon duty, i.e., the different work types, schedules, environments, and overtime pay opportunities, at least raise a factual dispute whether being barred from platoon duty and limited only to special duty because of his disability constitutes an adverse employment action. The contention lacks merit.

The parties correctly agree on the standard of review, which we briefly summarize. Summary judgment is proper if the "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken" in support of and in opposition to the motion "show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subds. (b), (c); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843–845 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767–768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) "[W]e take the facts from the record that was before the trial court when it ruled on that motion. [Citation.]" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 [32 Cal.Rptr.3d 436, 116 P.3d 1123] (hereafter *Yanowitz*).) On appeal, " ' "[w]e review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party. [Citation.]" (*Ibid.*; see *Saelzler v. Advanced Group 400, supra*, 25 Cal.4th at pp. 767–768.)

■ The parties also correctly agree that, in order to succeed on his claims, plaintiff must show "that he suffered from a disability, was otherwise qualified to do his job, and was subjected to adverse employment action because of his disability. [Citation.]" (*Finegan v. County of Los Angeles* (2001) 91 Cal.App.4th 1, 7 [109 Cal.Rptr.2d 762].)

It is undisputed that the Department refused to assign Malais to platoon duty because of the loss of his leg. Thus, we must determine whether that refusal and the related decision to limit Malais to special duty assignments constitute an adverse employment action. Like the trial court, we conclude they do not.

In *Yanowitz, supra*, 36 Cal.4th at pages 1049–1055, our Supreme Court reviewed what constitutes an adverse employment action in a factually different but analytically similar context of an employment discrimination lawsuit. The court held that an "adverse employment action" consists of discrimination regarding compensation, terms, conditions, or privileges of employment *and* disparate treatment in employment, specifically requiring people to work in a discriminatorily hostile or abusive environment. (*Id.* at p. 1052.)

The court defined "adverse employment action" thus: "Although a mere offensive utterance or even a pattern of social slights by either the employer or coemployees cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment for purposes of section 12940[, subdivision] (a) . . . , the phrase 'terms, conditions, or privileges' of employment must be interpreted liberally and with a reasonable appreciation of the realities of the workplace in order to afford employees the appropriate and generous protection against employment discrimination that the FEHA was intended to provide." (*Yanowitz, supra*, 36 Cal.4th at p. 1054, fns. omitted.) The court elaborated that "the determination of what type of adverse treatment properly should be considered discrimination in the terms, conditions, or privileges of employment is not, by its nature, susceptible to a mathematically precise test, and the significance of particular types of adverse actions must be evaluated by taking into account the legitimate interests of both the employer and the employee. Minor or relatively trivial adverse actions or conduct by employers of fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable, but adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls within the reach of the antidiscrimination provisions of sections 12940[, subdivision] (a) and 12940[, subdivision] (h)." (*Id.* at pp. 1054–1055, fn. omitted.)

Not every change in the conditions of employment, however, constitutes an adverse employment action. " 'A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient.' . . . ' "[W]orkplaces are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." . . . If every minor change in working conditions or trivial action were a materially

adverse action then any "action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." . . .' . . . The plaintiff must show the employer's . . . actions had a detrimental and substantial effect on the plaintiff's employment." (*McRae v. Department of Corrections and Rehabilitation* (2006) 142 Cal.App.4th 377, 386–387 [48 Cal.Rptr.3d 313], citations omitted, citing *Yanowitz, Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1455 [116 Cal.Rptr.2d 602], and *Thomas v. Department of Corrections* (2000) 77 Cal.App.4th 507, 511 [91 Cal.Rptr.2d 770].)

■ Applying these principles to the relevant undisputed facts before us, we conclude that the court properly found that Malais did not suffer an adverse employment action by being limited to special duty assignments. Although so limited, Malais continued to receive promotions after his injury until he reached the top of the Captain II range. Moreover, although he was not sure that he wanted to pursue them, Malais had equal opportunities for promotion to higher positions, from Battalion Chief to Chief of the Department. Although Malais claimed that he earned less overtime in his special duty assignment than he had while on platoon duty before his injury, it was undisputed that special duty assignments included substantial overtime opportunities which Malais did not maximize because he did not enjoy the work as much as that involved in platoon duty. Moreover, there was no evidence that Malais suffered from a hostile work environment. Indeed, the only reason Malais was dissatisfied with special as opposed to platoon duty was that he preferred the work, schedule, and camaraderie of platoon duty to that of special duty, not that he suffered any adverse employment consequences from being limited to special duty.

■ None of the cases cited above, nor those on which Malais relies (*Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1386–1390 [37 Cal.Rptr.3d 113], and *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 373–375 [33 Cal.Rptr.3d 644]), found adverse employment actions in transfers that involved working in assignments the employee preferred less than other assignments but with equal pay, benefits, promotional opportunities, and no hostile environment. None of the cases supports the proposition that assignment to a less preferred position *alone* constitutes an adverse employment action. Because the court properly found that Malais did not suffer an adverse employment action, it properly granted the Department summary judgment.

## DISPOSITION

The judgment is affirmed. The Department is entitled to its costs on appeal.

Vogel, Acting P. J., and Jackson, J.,* concurred.

A petition for a rehearing was denied May 16, 2007, and appellant's petition for review by the Supreme Court was denied August 8, 2007, S153271.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.