Filed 11/22/21  Doyen v. City of Los Angeles CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANTHONY DOYEN, | B299745 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC569363) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court for Los Angeles County, Rupert A. Byrdsong, Judge.  Reversed.

McNicholas & McNicholas, Matthew S. McNicholas, Courtney C. McNicholas; Esner, Chang & Boyer, Kevin K. Nguyen and Andrew N. Chang for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Kathleen A. Kenealy, Chief Deputy City Attorney, Scott Marcus, Senior Assistant City Attorney, and Blithe S. Bock, Assistant City Attorney, for Defendant and Respondent.

Plaintiff Anthony Doyen, a Sergeant in the Los Angeles Police Department (LAPD), appeals from a summary judgment entered in favor of defendant City of Los Angeles (City) on Doyen's claims for retaliation. Doyen alleged he was excluded from being considered for a supervisor position in the LAPD's Bomb Squad—a position for which he met all of the mandatory criteria and was the most qualified of all candidates—in retaliation for giving testimony in a discrimination and retaliation lawsuit that had been filed by another officer. This case presents two issues that are unique due to the circumstances present here.

First, the position that Doyen sought is a downgrade in rank from his current position (from Sergeant II to Sergeant I). City argues, and the trial court found, that denial of a transfer from a Sergeant II position to a Sergeant I position did not constitute an adverse employment action. However, there is evidence that at the time Doyen applied for and was turned down for the position, he was a Sergeant I, and the position he sought was a Sergeant I position with an increased paygrade. Moreover, even if he had been a Sergeant II at the time he was denied the position, Doyen contends that because the downgrade in rank came with an increased paygrade, as well as increased opportunities for overtime, he suffered an adverse employment action when he was excluded from consideration for the position.

Second, a significant period of time elapsed between the protected conduct and the denial of Doyen's application for the position, during which Doyen was promoted twice and obtained a coveted position in the Internal Affairs Group. Therefore, City argues, and the trial court

2

found, that Doyen could not establish a causal link between the protected activity and any adverse employment action. Doyen contends, however, that he suffered retaliation immediately after the protected activity (during which he was assigned to the Bomb Squad as a bomb technician), that the retaliatory conduct continued throughout his time there, and that he was forced to transfer out of the Bomb Squad in order to gain his promotions. He asserts that this retaliation continued when, two years after his transfer, he applied for a supervisor position in the Bomb Squad and two of the three people responsible for making the decision regarding his application—the supervisors of the Bomb Squad and of the division section of which it is a part—were the same people who had engaged in, or had been aware of and did not stop, the prior retaliation.

We conclude there were disputed issues of fact whether the Bomb Squad supervisor position offered Doyen an opportunity for increased compensation (regardless of whether there was a downgrade in rank), such that the alleged refusal to consider him for the position constituted an adverse employment action.

We also find the evidence of Doyen being shunned, excluded from trainings, and treated differently than other members of the Bomb Squad, which began immediately after his involvement in his fellow officer's lawsuit became known and continued throughout his time in the Bomb Squad, could support an inference of retaliatory intent. And even though there was a two-year period—while he was assigned to a different division—during which he was not subject to retaliatory conduct, a reasonable jury could infer retaliatory intent from the fact

3

that two of the same supervisors who were aware of or responsible for the earlier alleged retaliation were involved in the decision not to consider Doyen's transfer application.

Accordingly, because we find there was sufficient evidence from which a jury could conclude that Doyen suffered an adverse employment action motivated by retaliation for his protected conduct, we reverse the summary judgment.

## BACKGROUND

A.    *Factual Background*

We recite the factual background in accordance with the standard of review for summary judgments. We "liberally constru[e] the evidence in support of the party opposing summary judgment and resolv[e] doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 (*Miller*).)

Doyen joined the LAPD in 1996 after being honorably discharged from the United States Navy, where he served for 12 years, earning the rank of E-6, the equivalent of Staff Sergeant. While in the Navy, he served as military police and as a narcotics and explosives K-9 handler.

In 2003, Doyen was selected to join the LAPD's Bomb K-9 Unit, which is part of the Emergency Services Division.[1] The Hazardous Devices and Materials Section (HDMS)—which consists of the Bomb

---

[1]    While assigned to the Bomb K-9 Unit, Doyen held the rank of "Police Officer III plus 1" (the "plus 1" indicated the level of hazardous duty pay to which he was entitled as a member of that unit).

4

Squad, HazMat Unit, and Logistics Unit—also is a part of the Emergency Services Division. The Bomb K-9 Unit and the Bomb Squad work closely together, sharing patrol duties at LAX and participating in joint training exercises.

While Doyen was assigned to the Bomb K-9 Unit, two of the officers with whom he served in that unit, Officer Don Bender and Officer Patty Fuller, filed lawsuits against the City for violations of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Officer Fuller alleged she had been discriminated against and sexually harassed while working in the Bomb K-9 Unit, and Officer Bender alleged he was retaliated against for supporting Officer Fuller.

In 2008, Doyen applied for and was selected to join the Bomb Squad as a bomb technician trainee. Although he remained at the same rank (Police Officer III), the move from Bomb K-9 to Bomb Squad increased his paygrade from "plus 1" to "plus 3". Shortly after he started on the Bomb Squad, Doyen was called to the City Attorney's office to be questioned about the lawsuits that had been filed by Officers Fuller and Bender. Doyen also was deposed and called to testify at trial in Bender's lawsuit, which resulted in a multi-million dollar jury verdict; the City then settled Fuller's lawsuit for a similar amount.

Doyen's supervisors—his immediate supervisor, Detective II Doug Stice; the Officer in Charge (OIC) of the Bomb Squad, Sergeant II Mike Salinaz; and the OIC of HDMS, Lieutenant Rick Smith—and other members of the Bomb Squad were aware that Doyen had been questioned by the City Attorney's office and that he was deposed and testified in Officer Bender's lawsuit. Doyen presented evidence that

5

from the time he was called to the City Attorney's office he was shunned and excluded from activities by other members of the Bomb Squad. Although Sergeant Salinaz and Lieutenant Smith were made aware of this conduct, they did nothing to try to stop it.

Detective Stice also began singling Doyen out, treating him differently than other trainees, and making disparaging remarks about him to other members of the Bomb Squad. Doyen reported Detective Stice's behavior to another supervisor in the Bomb Squad. After an investigation, during which Detective Stice was "loaned" to another entity within the Emergency Services Division, Detective Stice was given a four-day suspension. Once he served the suspension, Detective Stice returned to the Bomb Squad, over Lieutenant Smith's objection, and once again supervised Doyen.

Despite the disciplining of Detective Stice, the shunning and disparaging comments by other members of the Bomb Squad continued. In addition, Doyen was subjected to unequal treatment by the OIC of the Bomb Squad, Sergeant Salinaz. For example, Doyen was not allowed to attend training courses while he was on call, even though other technicians were allowed to do so, and he was excluded from other training and squad activities. During an important FBI training session held at the Bomb Squad office, Sergeant Salinaz removed Doyen from the classroom, telling Doyen he could not attend because he was on call; Detective Ron Capra, a 15-year veteran of the Bomb Squad, stated in a declaration that he had never witnessed a bomb technician, other than Doyen, prohibited from attending a training class while on call. In 2010 or 2011, Sergeant Salinaz ordered Doyen to attend roll call

6

at the Bomb Squad office on a day in which he was assigned to off-site training. Yet the regular practice of the Bomb Squad for an officer so assigned was to go directly to training and simply call in to let his immediate supervisor know he or she was proceeding to training. When Doyen arrived at roll call that day, Sergeant Salinaz berated him in front of other Bomb Squad members.

Despite this treatment, Doyen never received any negative written performance reviews, comments, or ratings and, in 2012 he competed for and won a promotion to Sergeant I. Although he wanted to stay with the Bomb Squad, he was told he could not promote from within the squad and was required to transfer out to obtain field supervisory experience, even though other members of the Bomb Squad had not been required to do so. As a result, Doyen transferred to Pacific Division, where he was assigned as supervisor in patrol. After several months there, the Captain of Pacific Division assigned Doyen to the position of Assistant Watch Commander, which typically is a Sergeant II position.

Doyen spent a year in Pacific Division. In May 2013, he applied for and was selected for a "coveted position" in the Internal Affairs Group. He admitted that a position in Internal Affairs "is a great stepping-stone for enhancing your career within the Department," and is seen as a springboard for becoming a lieutenant and captain. He said his goal was to promote to lieutenant or captain and go back to the Bomb Squad and replace the OIC of HDMS (Lieutenant Smith) or the OIC of EDS. While at Internal Affairs, Doyen was selected as

7

"Employee of the Quarter" by his supervisors and peers in January 2014, and was upgraded to Sergeant II in June 2014.

In the meantime, a Bomb Squad supervisor position (a Sergeant I plus 3 position) opened up in the Bomb Squad when Detective Stice left in late 2013. In February 2014, before his upgrade to Sergeant II, Doyen applied for the position.[2] The selection process for the position involved both objective and subjective components. There were listed objective criteria that each candidate was required to meet, one of which was that the candidate must be willing and able to certify as a bomb technician. Doyen met all the criteria for the position and, because he was a certified bomb technician, he would have been an operational supervisor upon hiring. None of the other candidates had experience with explosives; all would have been required to become certified bomb technicians and handle calls as lead technician for a year before they could be operational supervisors.

In addition, as part of the selection process each qualified candidate was required to appear before a panel of three supervisors for

---

[2] There is some confusion in the record about whether Doyen was a Sergeant I or Sergeant II at the time he applied for the Bomb Squad supervisor position in February 2014. In his deposition, Doyen testified that he was a Sergeant II at that time, but in an interview with Internal Affairs, when he had before him the LAPD document setting forth his employment history, he testified that he was upgraded to Sergeant II in June 2014. Therefore, there is a disputed issue of fact regarding his rank at the time of his application. Because we are reviewing a summary judgment, and must view the evidence in the light most favorable to Doyen, we assume for purposes of the motion that he was a Sergeant I when he applied for the position.

an oral interview. Each member of the panel would subjectively assign a score for each candidate based upon his or her performance in the interview. The scores of the three panelists would then be added together and averaged out, and that average number would be one of the factors used to place the candidate into one of four rankings: outstanding, excellent, satisfactory, and unsatisfactory. The panelists who interviewed Doyen and the other candidates for the position at issue here consisted of Lieutenant Smith, Sergeant Salinaz, and Lieutenant Anita McKuen.

At some point during the selection process, Lieutenant Smith showed Detective Capra, who was Operations Coordinator Supervisor of the Bomb Squad, a list of the candidates who had applied for the Bomb Squad supervisor position. Lieutenant Smith asked Detective Capra who he thought was the most qualified, best candidate for the position. Detective Capra immediately said, "Hands down, Tony Doyen" was the best candidate. Lieutenant Smith responded, "No, not Tony."

Doyen was informed that he was not selected for the position on or around February 28, 2014.

B. *Doyen's Lawsuit*

Doyen filed a government claim against City, LAPD, and others on July 17, 2014, alleging violations of Labor Code section 1102.5, retaliation in violation of public policy, and other claims. He alleged that he had engaged in protected activity during his time in the Bomb Squad (including testifying in the Bender lawsuit, standing up for his rights and the rights of others, and opposing improper conduct by

9

supervisors and command staff), that he had been subject to numerous acts of retaliation on a continuing and ongoing basis, and that the failure to select him for the Bomb Squad supervisor position was retaliation for his prior protected activity. He subsequently filed an employment discrimination complaint with the California Department of Fair Employment and Housing based upon the same allegations, and received a right to sue letter.

Doyen filed the instant complaint against City on January 14, 2015. The complaint alleges two causes of action for retaliation: one for violation of Government Code section 12940, subdivision (h) (the FEHA claim), and one for violation of Labor Code section 1102.5 (the whistleblower claim). In the FEHA claim, the complaint alleges that the protected activity in which Doyen engaged included refusing to participate in race-based harassment and retaliation, participating in the Bender lawsuit, and reporting Detective Stice's retaliation against him; it identifies the adverse employment actions he suffered in retaliation as including denying Doyen the Bomb Squad supervisor position, ostracizing Doyen within the unit, causing damage to his reputation, being denied a work environment free from harassment and retaliation, and interference with his ability to do his job. In the whistleblower claim, the complaint alleges that Doyen made complaints to LAPD that he had reasonable cause to believe disclosed violations of state or federal statutes, rules, and regulations; it identifies the same adverse employment actions as in the FEHA claim.

10

C.    *Summary Judgment Motion*

City moved for summary judgment on two grounds.  First, City argued that as a matter of law Doyen did not suffer an adverse employment action because the transfer he requested to the position of Bomb Squad supervisor was a downgrade from his Sergeant II position in Internal Affairs, and his "other trivial gripes" did not constitute adverse employment acts.  Second, City argued that Doyen could not establish a causal link between his protected activity and any adverse employment action because there was a six year gap between the protected activity and his failure to get the requested transfer, during which time Doyen was promoted, advanced, and received a prestigious award.  In support of its motion, City relied upon the allegations of the complaint, Doyen's deposition testimony, and statements Doyen made in his interview conducted by Internal Affairs during its investigation of his government claim.

In opposition to City's motion, Doyen submitted evidence (including his own deposition testimony and declarations from Detective Capra and another officer who worked with Doyen in the Bomb Squad) setting forth how he was treated by other officers and supervisors while he was assigned to the Bomb Squad.  Detective Capra's declaration also described the encounter he had with Lieutenant Smith regarding Doyen's application for the Bomb Squad supervisor position.  Finally, Doyen submitted evidence that the "plus 3" paygrade provided to officers and supervisors in the Bomb Squad amounted to a 16.5 percent increase in pay, that the Bomb Squad offered more overtime opportunities, and that positions in the Bomb Squad were considered to

11

be so desirable that several officers took downgrades in rank in order to take (or keep) positions in that unit.

Doyen argued that he was subjected to numerous adverse employment actions during his four years while assigned to the Bomb Squad, including being required to transfer out of the Bomb Squad in 2012 in order to promote to Sergeant. He also argued that he suffered an adverse employment action when Lieutenant Smith refused to consider him for the position despite his qualifications for the job.[3] Finally, Doyen argued there was a causal link between his protected activity and the adverse employment action because he presented evidence that Lieutenant Smith and Sergeant Salinaz knew about his protected conduct, and the retaliatory conduct was continuous.

The trial court granted City's motion, finding that Doyen had not suffered an adverse employment action and that he could not establish a causal link between the protected activity and any adverse employment action due to the amount of time that had passed and intervening events that occurred between the protected activity and the alleged adverse action. The court thereafter entered judgment in favor of City.

Doyen timely appealed from the judgment.

---

[3] Doyen also argued that he suffered a further adverse employment action in 2015 when he applied for a supervisor position in the Bomb K-9 Unit but the OIC of that unit refused to consider his application, and again later that year when he applied for a different position in Internal Affairs but was not considered for it due to his filing of the instant lawsuit. However, those alleged actions cannot form the basis for liability in the present lawsuit, since they occurred after this lawsuit was filed.

## DISCUSSION

"[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. [Citations.] Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ""drops out of the picture,"" and the burden shifts back to the employee to prove intentional retaliation." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).) This same standard applies to a whistleblower claim under Labor Code section 1102.5. (*Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1384.)

In the present case, City challenges only Doyen's prima facie case; it did not below, and does not here, address the second step of the retaliation analysis. Therefore, our review is limited to whether Doyen established a prima facie case. And, because City does not dispute that Doyen engaged in protected activity, our review is further limited to whether Doyen produced evidence sufficient to establish that he was subjected to an adverse employment action and that there was a causal link between his protected activity and that adverse employment action.

A.    *Standard of Review*

"Under Code of Civil Procedure section 437c, subdivision (c), summary judgment 'shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (*EHP Glendale, LLC v. County of Los Angeles* (2011) 193 Cal.App.4th 262, 270.)  In ruling on a summary judgment motion, the trial court determines only whether triable issues of fact exist; it does not resolve those issues. (*Id.* at pp. 270–271.)  The court must consider all of the evidence and inferences to be drawn from it and determine "what any evidence or inference *could show or imply to a reasonable trier of fact.*" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856.)  Therefore, "if any evidence or inference therefrom shows or implies the existence of the required element(s) of a cause of action, the court must deny a defendant's motion for summary judgment or summary adjudication because a reasonable trier of fact could find for the plaintiff." (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1474.)  On review, we apply the same standard as the trial court, i.e., we review the record de novo to determine whether there are triable issues of material fact, "liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller*, *supra*, 36 Cal.4th at p. 460; see also *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.)

14

B.    *Adverse Employment Action*

In *Yanowitz, supra,* 36 Cal.4th 1028, one of the issues before the Supreme Court was "the appropriate standard for determining whether an employee has been subjected to an adverse employment action for purposes of a retaliation claim under the FEHA." (*Id.* at p. 1049.)  To make this determination, the court began with the language of the retaliation statute, which makes it an unlawful employment practice for an "employer . . . to discharge, expel, *or otherwise discriminate* against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Gov. Code, § 12940, subd. (h), italics added (hereafter section 12940(h)).)  The court noted that the FEHA does not expressly define "discriminate" or "otherwise discriminate" as used in section 12940(h), but that the initial and basic antidiscrimination provision of the FEHA applicable to employers— Government Code section 12940, subdivision (a)—provided more specificity as to what constituted discrimination under the act:  "'to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, *or to discriminate against the person in compensation or in terms, conditions or privileges of employment.*'" (*Yanowitz, supra,* 36 Cal.4th at p. 1049.)

Viewing those provisions together, the court concluded "that the Legislature intended to extend a comparable degree of protection both to employees who are subject to the types of basic forms of

15

discrimination at which the FEHA is directed—that is, for example, discrimination on the basis of race or sex—and to employees who are discriminated against in retaliation for opposing such discrimination." (*Yanowitz*, *supra*, 36 Cal.4th at p. 1050.) Therefore, the court held that to prevail on a retaliation claim, the employee must demonstrate that he or she has been subjected to an adverse action that materially affects the terms, conditions, or privileges of employment. (*Id.* at p. 1051.)

The court rejected the argument made by the plaintiff in that case that the court's adoption of this standard (as opposed to the standard urged by the plaintiff, i.e., that an adverse employment action includes any action that is reasonably likely to deter employees from engaging in protected activities) would leave employees "with an inadequate degree of protection and vulnerable to a broad range of retaliatory measures." (*Yanowitz*, *supra*, 36 Cal.4th at p. 1052.) The court observed: "we believe this argument rests, at least in part, on an unduly narrow view of the type of adverse employment actions that are forbidden by section 12940[, subdivision] (a). Retaliation claims are inherently fact specific, and the impact of an employer's action in a particular case must be evaluated in context. Accordingly, although an adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable, the determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim." (*Ibid.*) The court cautioned that "the determination of what type of adverse treatment properly should be considered discrimination in the terms, conditions, or

16

privileges of employment is not, by its nature, susceptible to a mathematically precise test, and the significance of particular types of adverse actions must be evaluated by taking into account the legitimate interests of both the employer and the employee." (*Id.* at p. 1054.)

With the Supreme Court's discussion in mind, we turn to the facts of this case.

As noted, City contends, and the trial court found, that Doyen did not suffer an adverse employment action by not being selected for the Bomb Squad supervisor position because that position (Sergeant I plus 3) would be a downgrade from the Sergeant II position he held in Internal Affairs. We find that City's and the trial court's focus is too narrow.

First, City's contention and the trial court's finding ignores the conflicting evidence regarding Doyen's rank at the time he applied for the Bomb Squad supervisor position. Viewing the evidence in the light most favorable to Doyen, as is required on a summary judgment motion, the court must assume that Doyen was a Sergeant I, applying for a Sergeant I plus 3 position.

Second, even if it were appropriate to credit the evidence that Doyen was a Sergeant II at the time he applied for the Bomb Squad supervisor position, the case the trial court relied upon in finding no adverse employment action, *Malais v. Los Angeles City Fire Dept.* (2007) 150 Cal.App.4th 350 (*Malais*), is distinguishable.

In *Malais*, the employee was a Captain II in the Los Angeles City Fire Department (LAFD). In the LAFD, a Captain II may be assigned to different classes of positions, including special duty and platoon duty.

Captain II special duty assignments generally involve working a regular 40-hour workweek in an environment resembling a business office, although some positions, such as a training position, may simulate actual firefighting. Captain II platoon duty assignments generally involve working at fire stations on a schedule of consecutive 24-hour days on duty, alternating with 24-hour days off duty, followed by consecutive days off duty, in an environment involving a team of firefighters preparing for and fighting fires. (*Malais, supra,* 150 Cal.App.4th at p. 354.)

The plaintiff in *Malais* had been injured in a work-related incident, and his right leg was amputated below the knee. (*Malais, supra,* 150 Cal.App.4th at p. 354.) When he returned to full-time work, he was assigned to In-Service Training, a special duty assignment. (*Ibid.*) Believing he was rehabilitated and, with his prosthesis, could fully perform all duties of a Captain II assigned to platoon duty, he asked to be reassigned. The LAFD, believing that his working in such an assignment with a prosthetic leg posed an unacceptable risk to him, other firefighters, and the public, refused his request. He then filed a lawsuit against the LAFD, alleging claims for disability discrimination. (*Id.* at p. 355.) The trial court granted summary judgment to the LAFD, and the appellate court affirmed, finding that the plaintiff did not suffer an adverse employment action because, while the plaintiff may have preferred a platoon duty assignment, special duty assignments and platoon duty assignments provided equal pay, equal opportunities for

18

promotion, and equal opportunities for significant overtime. (*Id.* at pp. 354–355, 358.)

In the present case, Doyen presented evidence that the Bomb Squad supervisor position and his Sergeant II position in Internal Affairs did not offer entirely equal terms. He testified in his deposition that despite the downgrade in rank, the increase in pay grade for the Bomb Squad position would have resulted in either the same or a slight increase in pay. Doyen also testified that there were far more opportunities for overtime with the Bomb Squad position. Based on this evidence, a reasonable trier of fact could find that not being selected for the Bomb Squad supervisor position adversely affected the terms, conditions, or privileges of Doyen's employment, namely, the opportunity to increase his income through overtime. Therefore, we conclude that City was not entitled to summary judgment on the ground that Doyen failed to establish the adverse employment action element of his prima facie case.

C.    *Causal Link*

As noted, as an additional ground for granting City's summary judgment motion, the trial court found that Doyen could not establish a causal link between his protected activity and any adverse employment action due to the amount of time and intervening events between the protected activity and the alleged adverse action. City agrees, arguing that the six years that elapsed between Doyen's protected acts in 2008—his participation in the Bender lawsuit and his complaint against Detective Stice—and his failure to get the Bomb Squad

19

supervisor position in 2014 destroys any causal nexus. Once again, we find this focus too narrow.

It is true that six years passed between Doyen's protected activity in 2008 and the alleged adverse employment action of failing to get the Bomb Squad supervising position in 2014. But the mere lapse of time does not defeat the causal link.

Doyen presented evidence of a consistent pattern of retaliation beginning in 2008, after he was interviewed by the City Attorney's office in connection with the Bender and Fuller lawsuits in 2008, and 2012, when he left the Bomb Squad. According to this evidence, immediately after the 2008 City Attorney interview, Doyen was shunned, excluded from training, and treated differently than other members of the Bomb Squad. Such conduct continued throughout the next four years while he was with the Bomb Squad. Further, Doyen's supervisors—Bomb Squad OIC Sergeant Salinaz and HMDS OIC Lieutenant Smith—were aware of and/or participated in this conduct and did nothing to stop it. In 2012, Doyen was forced to transfer out of the Bomb Squad in order to promote to Sergeant I, even though other members (before and after him) had been allowed to promote within the squad.

Obviously, this evidence raised a triable issue of retaliation throughout the period from 2008, the year Doyen participated in the Bender and Fuller lawsuits, to 2012, when he was forced to transfer from the Bomb Squad in order to escape the retaliation and receive a promotion. (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 421 ["A long period between an employer's adverse employment action and the employee's earlier protected activity

may lead to the inference that the two events are not causally connected. [Citation.] But if between these events the employer engages in a pattern of conduct consistent with a retaliatory intent, there may be a causal connection"].)

It is true that in the two-year period from 2012, when Doyen left the Bomb Squad, to 2014, when he sought to return and was denied the Bomb Squad Supervisor position, he was not subjected to any retaliatory conduct. But on the specific facts here, this two-year, retaliation-free period does not break the causal link between the 2008 protected activity (for which Doyen suffered retaliation until he left the Bomb Squad in 2012) and the 2014 adverse employment action (when he sought to return to the Bomb Squad in the position of supervisor). The reason: the evidence Doyen presented would allow a trier of fact to infer that Doyen's supervisors in the Bomb Squad, Sergeant Salinaz and Lieutenant Smith, harbored retaliatory intent while he served in the Bomb Squad, a part of the Emergency Services Division. That Doyen was free from retaliatory conduct after he left the Bomb Squad while he was assigned to different Divisions or Groups, with different supervisors and commanding officers, does not wipe the slate clean with regard to that inference. Rather, a trier of fact reasonably could conclude that, when Doyen sought to return to the Bomb Squad in 2014, two years after leaving in 2012, Sergeant Salinaz and Lieutenant Smith continued to harbor a retaliatory intent. Indeed, that conclusion would be bolstered by evidence that when Detective Capra, after being solicited by Lieutenant Smith for his opinion about who was the best candidate for the Bomb Squad supervisor position, identified Doyen as

21

"[h]ands down" the best and most qualified candidate, Lieutenant Smith, without rejecting that assessment, promptly responded, "No, not Tony." Thus, City was not entitled to summary judgment on the ground that Doyen failed to establish the causal link element of his prima facie case.

We note that although we conclude that the alleged retaliatory conduct that took place between 2008 and 2012 is relevant to establish retaliatory intent with respect to the alleged failure to consider Doyen for the Bomb Squad supervisor position in 2014, we do not decide here whether Doyen is barred from recovering damages based on that prior conduct. City contended below and contends here that Doyen cannot recover such damages because he failed to file a complaint with the Department of Fair Employment and Housing within a year of that conduct, and asserts that the continuing violation exception under *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798 does not apply. But City's motion was for summary judgment, not summary adjudication. As such, it challenged Doyen's complaint in its entirety, and did not ask the trial court to determine whether any portion of Doyen's claims were time-barred. We have found that there are triable issues with regard to whether Doyen suffered an adverse employment action and whether there was a causal link between his protected activity and that adverse action—the only grounds on which City moved for summary judgment. Therefore, the summary judgment must be reversed, and we have no cause to consider the applicability of the continuing violation exception at this time.

## DISPOSITION

The judgment is reversed. Doyen shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

MANELLA, P. J.

KIM, J.*

---

*Associate Justice of the Court of Appeal, Second Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.