Filed 6/16/25  Schlotthauer v. County of San Bernardino CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA


| | |
|---|---|
| ERIC SCHLOTTHAUER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF SAN BERNARDINO,<br><br>    Defendant and Respondent. | D084507<br><br><br>(Super. Ct. No. CIVDS2000751) |


APPEAL from an order of the Superior Court of San Bernardino County, Wilfred J. Schneider, Jr., Judge.  Affirmed.

The Finkel Firm, Jake D. Finkel, Sheryl L. Marx, and Allison D. Norder, for Plaintiff and Appellant.

Alvarez-Glasman & Colvin, Sharon Medellín, Eric Salbert and Christy M. Garcia for Defendant and Respondent.

Prior to submitting her retirement package, Nancy Schlotthauer sued her employer, the County of San Bernardino, alleging disability discrimination and related causes of action.  The trial court granted summary adjudication as to five causes of action and a jury found the County not liable on the remaining two.

Schlotthauer appeals the summary adjudication as to four of the causes of action, arguing the trial court erred when it determined there were no triable issues of fact. In responsive pleadings, the County informed us Schlotthauer passed away in August 2024, after filing the notice of appeal. Schlotthauer's husband, Eric, has since substituted in as her successor in interest. We conclude the trial court correctly adjudicated the four challenged causes of action. We therefore affirm.

I.

We recite the facts in the light most favorable to Schlotthauer as the nonmoving party. (See *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

Schlotthauer worked as a Hazardous Materials Specialist III for the County. Schlotthauer fractured her shoulder in a nonwork-related snowboarding accident in March 2019. She took medical leave under the California Family Rights Act with an estimated return date of May 13.

During the first two weeks of Schlotthauer's CFRA leave, the County (1) enacted a planned transition and (2) decentralized service request processing. This upset Schlotthauer, who asked how the County could "MAKE SUCH A MAJOR DECISION" while she was on leave.

Under the updated process, inspectors input information directly into the California Environmental Reporting System instead of filing a service request with Schlotthauer. The County also transitioned the HMS-III position from CERS to Enforcement, which displeased Schlotthauer. The HMS-III job description and requirements remained identical.

Schlotthauer extended her leave to July 2, but did not request further accommodation. Under the terms of her Memorandum of Understanding, the

2

County backfilled her position. Her leave was further extended to September 17.

In preparation for her September return, the County offered Schlotthauer an HMS-III position. Schlotthauer did not accept it. She stated she might be able to return with restrictions and requested a copy of her job description to provide to her doctor. When her doctor received the job description, however, he advised she could not return to her duties until November 11. No HMS-III positions were or became available after Schlotthauer received medical clearance to return, and she expressed no interest in taking an HMS-II position.

Schlotthauer filed a complaint with the Department of Fair Employment and Housing on November 8 and received a right-to-sue letter. She filed a civil suit in January 2020 alleging various forms of discrimination and retaliation, including, as relevant here, 1) disability discrimination, 2) retaliation, 3) failure to accommodate, and 4) failure to engage in the interactive process.

In March, after the County answered Schlotthauer's complaint and while it worked to identify alternate positions, Schlotthauer retired. She claimed she was forced to do so. The County filed for summary judgment or, alternatively, summary adjudication. The trial court found no triable issues of material fact on five causes of action, granting summary adjudication on them. The County prevailed on the remaining causes of action following a jury trial.

Schlotthauer appeals the four claims identified above.

## II.

To begin, the County raises a jurisdictional question, arguing an order granting summary adjudication is not appealable.

3

An appealable order is a jurisdictional prerequisite for review. (*Jacobs-Zorne v. Superior Court* (1996) 46 Cal.App.4th 1064, 1070.) "The right to appeal is wholly statutory" (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5), yet no statutory right to appeal lies from an order granting summary adjudication (*Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761, fn. 7; Code Civ. Proc. § 437c, subd. (m)(1)). Rather, "[a]n order granting summary adjudication is reviewable in an appeal from a final judgment." (*Grobeson v. City of Los Angeles* (2010) 190 Cal.App.4th 778, 799.) "A judgment is the final determination of the rights of the parties (Code Civ. Proc., § 577) when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce" it. (*Dana Point*, 51 Cal.4th at p. 5 [cleaned up].)

The trial court entered final judgment in November 2023. An appeal challenging summary adjudication is appropriately taken from that judgment. (*Grobeson,* 190 Cal.App.4th at p. 799.) We may therefore turn to whether the court properly adjudicated Schlotthauer's claims.

Our review following an order granting summary adjudication parallels our review following an order granting summary judgment. (See *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 367.) Summary judgment exists "to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) A defendant is entitled to judgment as a matter of law if no triable issues exist as to any material fact. (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.) "We review the record and the determination of the trial court de novo" (*id.* at p. 1003), viewing the evidence in the light most

favorable to Schlotthauer and resolving any evidentiary doubts in her favor (see *Saelzler,* 25 Cal.4th at p. 768).

We address in turn each of Schlotthauer's claims.

A.

An adverse employment action is an element of a prima facie claim of (1) disability discrimination under the California Fair Employment and Housing Act and (2) retaliation under the California Family Rights Act. (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 865, 885-886.) An adverse employment action is one "that materially affects the terms, conditions, or privileges of employment" and "had a detrimental and substantial effect on the plaintiff's employment." (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 386-387.) Without alleging facts of an adverse employment action, Schlotthauer's claims necessarily fail. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

Schlotthauer identifies two supposedly adverse employment actions in support of these claims.

1.

First, Schlotthauer alleges her lead duties as the CERS HMS-III were taken away and given to another position. Not so.

Sometime between 2012 and 2015, Schlotthauer undertook technical support tasks intended for a "Business System Analyst" following a BSA's departure from CERS. As early as December 2017, her supervisor reminded Schlotthauer the CERS section was a data management section, and she would transition back into an HMS-III position in the future. These duties, which Schlotthauer complains were taken from her, were not given to a younger HMS-II, as Schlotthauer alleges, but rather distributed to all

5

inspectors. In April 2019, the County announced it was decentralizing those data-driven duties, allowing inspectors to submit data to CERS directly. While it is true this announcement occurred while Schlotthauer was on leave, it is evident the decision was made prior to Schlotthauer's disability.

To improve CERS, the County hired an HMS-II to deal with a backlog and streamline the process. Schlotthauer was "excited" about this because she was often "stuck in the weeds." The HMS-II thus was not a surprise hire, brought in to undermine Schlotthauer's role. Nor was Schlotthauer in the dark about the need to improve processes. The County prepared and presented a training the week of April 18, 2019, implementing the change. That training took place, at most, 13 business days after Schlotthauer informed the County of her injury and, at most, nine business days after she was scheduled to return from her vacation. These facts show the County already was moving toward alleviating the backlog of service requests and otherwise streamlining the CERS data input process. Schlotthauer thus fails to establish the streamlining of CERS or the reassignment to Enforcement were adverse employment actions motivated by her disability or her use of protected leave.

It is true Schlotthauer preferred the CERS data processing work; she threatened to quit upon the announcement she would no longer process service requests. It is also true she was not enthusiastic about working in Enforcement. She cites these preferences alongside a depublished case to persuade us the County's failure to cater to her preferences was an adverse employment action. However, assignment to a less preferred position alone is insufficient to demonstrate an adverse employment action. (*Malais v. Los Angeles City Fire Dept.* (2007) 150 Cal.App.4th 350, 358.) Schlotthauer does not advance any facts that could compel us to find the shift in duties, or her

6

assignment to a less preferred position, rose to the level of an adverse employment action.

2.

Second, Schlotthauer alleges the County did not allow her to return to work and constructively discharged her by forcing her to retire. She asserts available jobs were given away over her objections. Again, we disagree.

By Schlotthauer's own admission, the jobs she identifies were filled when she did not accept them and before she was cleared to return to work. In one instance, she alleges a position was filled the day after she filed another total disability certificate. This does not advance her position. The County, having received notice Schlotthauer would remain on leave and could not return to work, filled vacant positions, as it was entitled to do.

During her deposition, Schlotthauer asserted the County "always knew when [she] was coming back." But, following Schlotthauer's initial notification of her injury, she extended her leave four times, often with only a few days' notice. Schlotthauer offers no explanation as to how the County was to determine when it would be medically safe for her to return to work, and she cites no authority that the County was required to hold positions open indefinitely.

Nevertheless, Schlotthauer alleges the County hid available positions from her. It is an undisputed fact, however, that Schlotthauer was not cleared to return to an HMS-III position when any were unfilled. Schlotthauer cites a job posting as proof an HMS-III position was available. However, the posting was a continuous general job posting for an HMS-III position within the fire department. It indicates a "resulting eligible list will be used to fill vacancies throughout the [d]ivision," but does not identify any

7

vacancies. The continuously open position does not establish there was a vacancy the County failed to offer to Schlotthauer after November 11, 2019.

Taken together, Schlotthauer's facts do not establish she suffered an adverse employment action. Her duties did not change because of her temporary disability; rather, they changed in accordance with a plan that predated her injury. Nor was Schlotthauer's transfer to an Enforcement HMS-III position an adverse employment action simply because she disliked it.

\*     \*     \*

Ultimately, Schlotthauer does not establish the County (1) prevented her from returning to an HMS-III position or (2) hid available positions. Schlotthauer did not return to an HMS-III position because she was not medically cleared to do so and no positions were available when she was well. Absent facts demonstrating a cognizable adverse employment action, we must conclude the disability discrimination and retaliation claims fail and were properly adjudicated by the trial court. (*Miller,* 36 Cal.4th at p. 460.)

B.

Similarly, the court properly adjudicated Schlotthauer's claim the County failed to accommodate her disability.

The elements of a failure to accommodate claim required Schlotthauer to prove (1) she had a disability under FEHA, (2) she was qualified to perform the essential functions of her position, and (3) the County failed to reasonably accommodate her disability. (See *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1009-1010.) It was Schlotthauer's burden to prove her ability to perform her job's essential functions with accommodation. (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 976.)

8

Despite Schlotthauer's assertions that lifting and carrying were not essential functions of her job, every HMS-III position had the same job description, duties, and limitations. When presented with this reality, Schlotthauer delayed her return in accordance with her total temporary disability.

The doctor cleared Schlotthauer to return to work on July 2, 2019, based only on her verbal description of her job duties. She characterizes this work clearance, including a lifting restriction, as a request for accommodation. Yet the restriction was at odds with Schlotthauer's actual job and duties. Upon being reminded that the HMS-III position was not "solely . . . office work," as she mistakenly believed or hoped, Schlotthauer received a copy of the HMS-III job description to update her medical clearance. The doctor revoked the return to work certification, citing her inability to use her right arm.

The only accommodation Schlotthauer requested was additional time to heal; she delayed her return until she was sufficiently healed to complete her listed job duties. Her assertions to the contrary are based on her inaccurate communication of her job duties. While Schlotthauer may have received clearance to return with a lifting restriction for the job she wanted and described, the clearance was not based on her actual position. None of her disability certifications cleared her to return to work with accommodation, nor has she identified an accommodation that would allow her to resume work as an HMS-III before November 11, 2019, the first date she was available to return to work. The County's ability or willingness to accommodate Schlotthauer's disability is not disputed because they consistently granted her requested accommodation: additional leave. In sum,

9

as Schlotthauer has failed to show the County failed to accommodate her disability, the trial court properly adjudicated this cause of action.

## C.

Finally, Schlotthauer alleges there is a triable issue of material fact as to whether the County failed to engage in the interactive process. We conclude otherwise.

FEHA prohibits employers from failing "to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation." (Gov. Code, § 12940(n).) The process is "informal" and designed to "'identify a reasonable accommodation that will enable the employee to perform the job effectively.'" (*Scotch,* 173 Cal.App.4th at p. 1013.) "The employee must initiate the process unless the disability and resulting limitations are obvious." (*Ibid.*) The claim fails unless the employee identifies an actual, available accommodation that could have arisen from the process and allowed them to return to work. (*Id.* at p. 1018.)

The temporary total disability certificates Schlotthauer submitted made her limitations obvious: she could not return to work. Further, Schlotthauer did not identify any further accommodations that would make it possible to return to work as an HMS-III.

The facts also establish, however, that the County engaged in an interactive process to accommodate Schlotthauer's work restrictions in accordance with her medical requirements. Indeed, the County made the same accommodation repeatedly over the seven-month period before Schlotthauer was cleared to return to work: it extended her medical leave. When Schlotthauer no longer required accommodation—when she had fully recovered—there were no HMS-III vacancies. Nevertheless, the County

10

continued to work with Schlotthauer to identify other suitable positions. Instead of continuing to engage in that interactive process, Schlotthauer abruptly filed a complaint and retired. Accordingly, we conclude the trial court properly adjudicated the failure to engage cause of action.

## III.

We affirm. Respondent is entitled to costs on appeal.


CASTILLO, J.

WE CONCUR:


IRION, Acting P. J.


DATO, J.